[Civ. No. 25923. First Dist., Div. Four. Dec. 8, 1969.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Appellant, v.
ALMA C. EGGERT, Defendant and Respondent.

**COUNSEL**

Harry S. Fenton, John P. Horgan, John J. Murphy, William R. Edgar and Richard S. Levenberg for Plaintiff and Appellant.

Haley, Schenone, Tucker, Birchfield & Smith and Anthony B. Varni for Defendant and Respondent.

OPINION

**CHRISTIAN, J.**—This is an eminent domain proceeding brought to acquire for freeway purposes a strip along one edge of a right-of-way which had been condemned some years previously when the highway was to be built to an expressway standard. The take in the present proceeding comprises 8/10 of an acre in area, seven temporary easements for drainage purposes, and the extinguishment of two 20-foot access openings leading to the existing expressway from the property.

During the trial the jury heard the testimony of one appraiser called by the condemnor and another called by the property owner. Maps and aerial photographs displaying the subject property and the planned highway improvements were received in evidence. The jury viewed the property under the court's direction. The verdict returned by the jury determined that the value of the property taken was $1,425.89, and that there was neither severance damage nor any special benefit attributable to the condemnation or to the construction of the anticipated highway improvements.

The condemnee's appraiser had given his opinion that there was severance damage in the amount of $24,300 by reason of the taking of the two 20-foot openings onto the highway which had remained to the property following the earlier condemnation. The state's appraiser gave his opinion that there was no severance damage whatever. He based this opinion upon two factors: first, the two 20-foot openings (one of which leads to terrain which is too rough for convenient development of access roads) are too narrow for acceptance by county authorities having jurisdiction over any proposed residential subdivision; second, after completion of the proposed highway improvements, the property would have direct access to a frontage road giving safe and convenient access to the freeway by means of a bridge to be constructed by the state.

At the end of the direct examination of this witness, the condemnee moved to strike his testimony that there was no severance damage. The motion was based on the contention that under *People* ex rel. *Dept. of Public Works* v. *Silveira* (1965) 236 Cal.App.2d 604 [46 Cal.Rptr. 260], the state could not, after avoiding payment of severance damages in the prior taking by leaving points of access open to the property owner, avoid severance damages again in the second taking by claiming that access was already restricted because the highway authorities might not approve widening the access openings to meet minimum standards which would be required for county approval of a proposed subdivison. The court denied the motion to strike.

■ After judgment had been entered on the verdict, as related above, the court granted a new trial on all the grounds specified in the landowner's motion: inadequate damages, insufficiency of the evidence to justify the verdict, and error in law. The judge prepared and filed the same day a "notice of ruling" which specified as the reason for granting a new trial the court's conclusion "that it should have granted defendant's motion to strike the testimony of plaintiff's expert . . . with reference to severance damages . . . [relying] primarily upon the case of *People* v. *Silveira*." Thus, upon the state's appeal from the order granting a new trial, the sole issue is whether the trial court should have stricken the testimony of the state's appraiser that there was no severance damage. (Code Civ. Proc., § 657; *Mercer* v. *Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315].)

The *Silveira* case was similar to the present case in that a previous taking had left to the landowners four points of access which were limited in location and width (three 20-foot openings and one 40-foot opening) but unlimited as to usage. The state appealed, contending that the condemnees' appraiser should not have been allowed to give an opinion of severance damage based on the expectation that under Streets and Highways Code section 100.2 the highway commission would have permitted a widening of the points of access so as to make possible the laying out of streets which would conform to county requirements. This contention was rejected by the Court of Appeal with the observation that "we do not believe that the condemning authorities, having left to the abutting owners four unrestricted rights of access, can in a subsequent proceeding to acquire all such rights, claim that they are restricted rights because it is within the absolute power of the condemnor to withhold consent to their use as connections for a public road or street." (236 Cal.App.2d at p. 614.)

We note that in the present case the landowner has conceded that, apparently as in *Silveira*, "no evidence was introduced . . . as to the amount of severance damages, if any, received by the defendant property owner by reasons of [the earlier taking]." But for *Silveira*, it might appear that compensation for the limitation of access which resulted from the first condemnation would necessarily have been included in the first judgment and that the scope and value of the condemnee's access right remaining after the first taking, to be paid for in the second, was merely a question of fact. In the absence of any showing that compensation had not been received at the time access was first limited, expert testimony which assumed the existence of 20-foot limitations on access should not, one might think, be stricken. But we find in comparing the *Silveira* decision that despite the limitations of number, width, and location of points of access which we have referred to, the Court of Appeal regarded the landowners as

continuing to enjoy, after the first taking had been completed, " 'unrestricted easements of access' " (236 Cal.App.2d at p. 612) which were to be treated as part of the context of valuation in the second condemnation. Although the *Silveira* rationale may be puzzling, we find no basis for distinguishing the present case. If *Silveira* is to be changed, it should be by legislative action or by decision of the Supreme Court.

■ It does not follow, however, that the appraiser's opinion should have been stricken. As we have mentioned, his opinion that there was no severance damage was based on two independent theories. Although the first was untenable under *Silveira,* the second is not affected by that decision: the appraiser testified that "in the after condition they will have very good access [to a frontage road]," and that "You're going to have a safer means of entry into the property." According to this second theory advanced by the appraiser, even assuming (as is apparently required by *Silveira*) that the condemnee was losing unlimited rights of access, in practical effect such access directly onto an expressway would have been unsafe and unsatisfactory; hence, according to this theory, no severance damage resulted from the substitution of improved access to the proposed frontage road. The factual validity of this second basis of the appraiser's opinion may have been subject to attack, but such questions were for the jury to resolve. Thus, although the *Silveira* rule might have been given effect by striking the appraiser's references to the limitations on access which were imposed at the time of the first condemnation, the motion made by the condemnee was for an order striking in its entirety the opinion that there was no severance damage. It would have been error to grant that motion. Therefore the denial thereof was not a valid basis for granting a new trial.

The order is reversed.

Devine, P. J., and Rattigan, J., concurred.